UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE WRIGHT,

       Plaintiff

v.

       Case No. 2:16-12644
       District Judge Arthur Tarnow
       Magistrate Judge Anthony P. Patti

TERRANCE BUSH, DIRK
TEAMER, DANIEL
PFANNES, ALAN
BULIFANT, and DETROIT
MEDICAL CENTER-
HARPER PROFESSIONAL
HOSPITAL,

       Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTIONS TO DISMISS (DE 10, DE 19)**

**I.    RECOMMENDATION**:  The Court should grant the Wayne County

Defendants' motion to dismiss (DE 10) and Defendant Detroit Medical Center-

Harper Professional Hospital's motion to dismiss (DE 19) on the basis that

Plaintiff's claims against them are time-barred.

**II.    REPORT**

    **A.    BACKGROUND**

       Plaintiff is currently incarcerated at the MDOC's Saginaw Correctional

Facility (SRF), where he is serving a sentence imposed in state court on December

10, 2010 for several October 2, 2009 offenses.   *See* Case No. 107622-01 (Wayne

County), (DE 10-2, DE 19 at 14-18); www.michigan.gov/corrections, "Offender

Search."  On July 13, 2016, Plaintiff filed the instant lawsuit *in pro per* under 42

U.S.C. § 1983, alleging claims of a lack of due process and violations of the Equal

Protection Clause of the United States Constitution stemming from alleged reports

made by Defendants to the public regarding Plaintiff's January 2011 escape /

attempted escape from custody at the Detroit Medical Center (DMC)-Harper

Professional Hospital.  (DE 1.)

Defendants Terrance Bush, Dirk Teamer, Daniel Pfannes, and Alan Bulifant

are Wayne County Sheriff's Office employees, each of whom is sued in his

personal and official capacities.  The remaining Defendant is DMC-Harper

Professional Hospital, which is sued in its official capacity.

### B.   PENDING MATTERS

Judge Tarnow has referred this case to me for pretrial matters.  (DE 11.)  To

date, the four sheriff's office employees have filed an answer (DE 9) and a motion

to dismiss (DE 10), each of which was filed on October 5, 2016.  Plaintiff has filed

a timely response, which is, in part, a reply to the Wayne County Defendants'

answer.  (DE 18.)

In addition, DMC-Harper Professional Hospital ("Hospital") has filed an

answer (DE 16) and a motion to dismiss, which substantially mirrors the Wayne

County Defendants' arguments (DE 19).  Plaintiff's response was originally due by

March 6, 2017.  (DE 20.)  On May 17, 2017, the Court granted Plaintiff's February

1, 2017 request for an extension of time in which to respond and set the response

deadline for June 2, 2017.  (DE 21, DE 23.)[1]  For reasons which are set forth in the

Court's June 12, 2017 order, this deadline was extended to June 26, 2017.  (DE

28.)  As of the close of business on June 30, 2017, no response had been filed.

### C.    FED. R. CIV. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

---

[1] To the extent this report refers to the attachments to the Defendants' motions to
dismiss, the Court is not required to convert this Rule 12 motion to dismiss into a
Rule 56 motion for summary judgment.  For the most part, the attachments are:
court records or decisions in Plaintiff's criminal case (Case No. 10-007622-01-FC
(Wayne County) (DEs 10-2,10-3); notes from Defendant Bulifant's January 5,
2011 interview of Plaintiff (DE 10-4); the January 4, 2011 incident reports and
January 6, 2011 supplemental reports (DEs 10-5, 10-6); or, matters related to the
deputies' criminal case (Case No. 11-006795 (Wayne County) (DEs 10-7, 10-8).
(*See also* DE 19 at 13-62.)  As such these documents are either: **(1)** referred to in
the complaint and central to Plaintiff's claims, *Greenberg v. Life Ins. Co. of
Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *QQC, Inc. v. Hewlett-Packard Co.*,
258 F. Supp.2d 718, 721 (E.D. Mich. 2003) (Gadola, J.) (internal citations
omitted), **or (2)** matters regarding which I may take judicial notice, *Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the
complaint in its entirety, as well as other sources courts ordinarily examine when
ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated
into the complaint by reference, and matters of which a court may take judicial
notice.").

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").   Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

4

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

## D.   DISCUSSION

### 1.   Two Michigan court cases are relevant to Plaintiff's complaint in this Court.

#### a.   *People v. Wright* (Case No. 10-007622-1-FC (Wayne County))

On July 4, 2010, the state court entered a plea of not guilty as to several

charges, including kidnapping, 1st degree criminal sexual conduct, assault with

intent to murder, and weapons felony firearm, based upon the events of October 2,

2009.  (DE 10-2.)  According to Plaintiff, he was "detained and placed in the

Wayne County Jail . . . ."  (DE 1 at 9.)  On November 4, 2010, Plaintiff was found

guilty by a jury on various counts.  He was sentenced on December 10, 2010.  (*See*

DE 10-2.)  *The events underlying Plaintiff's instant complaint took place shortly*

*thereafter, in January 2011.*

Plaintiff filed a claim of appeal, but, on April 17, 2012, the Michigan Court

of Appeals determined that Plaintiff "failed to establish good cause supporting his

request for substitute counsel[,]" and "further waived his right to be present by

refusing to attend court on the day of his verdict and suffered no prejudice as a

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

result of his absence." *People v. Wright*, No. 302146, 2012 WL 1314147, *1 (Mich. App. Apr. 17, 2012).  (*See also* DE 10-3, DE 19 at 20-30.)  On June 12, 2012, reconsideration was denied.  On October 22, 2012, the Michigan Supreme Court denied the application for leave to appeal and denied the motion to remand. *People v. Wright*, 493 Mich. 870, 821 N.W.2d 667 (2012).   On March 4, 2013, the motion for reconsideration was denied.  *People v. Wright*, 493 Mich. 943, 826 N.W.2d 715, 716 (2013).

On March 1, 2016, the Wayne County Circuit Court denied Plaintiff's motion for relief from judgment.  (DE 10-2).  On May 2, 2016, Plaintiff filed a delayed application for leave to appeal, but it was later dismissed.  *People v. Wright*, No. 332750 (Mich. App. June 29, 2016).  On January 5, 2017, the Michigan Supreme Court denied the application for leave to appeal.   *People v. Wright*, No. 154307, 888 N.W.2d 98 (Mich. 2017).

### b. *People v. Teamer and Bush* (**Case Nos. 11-006795-01-FH, 11-006795-02-FH (Wayne County)**)

By way of background, Teamer and Cpl. T. Bush completed incident reports dated January 4, 2011 and January 6, 2011.  (DE 10-5, DE 19 at 36-38, DE 10-6, DE 19 at 40-41.)  An "Investigator's Request for Warrant" dated March 2, 2011 states, among other things:

- Both [Teamer and Bush] initially reported that inmate WRIGHT had leg irons on at the time of his escape when actually he did not.

- Both [Teamer and Bush] did not report [Teamer] drawing his gun in their initial reports.

(DE 10-7, DE 19 at 43-45.)

On June 10, 2011, the state court entered pleas of not guilty for Teamer and Bush as to several charges, including common law offenses, false report of a felony and willful neglect of duty.  At some point, Teamer and Bush were charged with common law offenses, false report of a felony and willful neglect of duty, seemingly based upon the January 4, 2011 reports.  On January 24, 2013, the state court granted Teamer and Bush's motion to suppress and denied the motion to dismiss.  (DE 10-8, DE 19 at 47-54.)

The State of Michigan filed delayed applications for leave to appeal, but these were denied.  *People v. Teamer*, Nos. 315220, 315228 (Mich. App. Apr. 18, 2013).  On September 18, 2013, the Michigan Supreme Court remanded the cases to the Court of Appeals.  *People v. Teamer*, Nos. 147052, 147053, 495 Mich. 857, 836 N.W.2d 679 (2013).  On March 4, 2014, the Court of Appeals reversed the trial court's suppression of defendants' written statements.  *People v. Teamer*, Nos. 315220, 315228, 2014 WL 860357, at *1 (Mich. Ct. App. Mar. 4, 2014).

It seems that the trial(s) began on July 7, 2014.  On July 14, 2014, the common law offenses were dismissed.  However, on July 15, 2014, a jury found

Teamer and Bush guilty of falsely reporting a felony and willful neglect of duty.[3]
On September 4, 2014, they were sentenced to probation.  (DE 10-8, DE 19 at 47-
54.)

>    **2.    Plaintiff's claims in the instant case stem from the alleged
>         events of 2011, when Plaintiff was incarcerated at WCJ.**

The facts underlying Plaintiff's complaint allegedly began in January 2011
while he was incarcerated at WCJ following his 2010 conviction and related
sentencing.  (DE 1 at 9-13.)  Plaintiff claims that, at some point during his
incarceration at WCJ, the medical staff scheduled a visit to Defendant Hospital to
treat "some medical problems."  On January 4, 2011, Defendant Bush walked
Plaintiff, unrestrained, to the parking garage and placed him in the back of a
transport van.  Defendant Teamer was "on the passenger side."  Upon arrival at the
hospital, Defendants Teamer and Bush escorted Plaintiff out of the van and into the
hospital, again unrestrained.  (DE 1 at 9.)  When they exited the hospital, Bush
went to the van, while Plaintiff, unrestrained, and Teamer remained on the back
dock area.  Plaintiff "turned and ran back to the rear of [the Hospital]."  Defendants

---

[3] By a Wayne County Sheriff's Office departmental communication dated July 17,
2014, Bulifant provided the Discipline Section with an "investigative report
package for Internal Affairs Section Case #11-0002."  (DE 10-4, DE 19 at 32-34.)
The July 2014 provision of this report does not seem to be the basis of Plaintiff's
claims against Bulifant, which appear to be limited to the alleged events of January
2011.  (DE 1 at 11-12, 18.)

Bush and Teamer "gave chase."  Plaintiff "fell over a wall" and "landed in a pit area that was a part of [the Hospital]."  He received a black eye, chipped a front tooth and broke his right middle toe.  Then, he got up and went through an unlocked door "located in the pit area" in which he had landed.  Plaintiff walked through the Hospital's basement area and "found a stairway w[h]ere [he] found a place to sit down."  He never left the Hospital.  (DE 1 at 10.)

In general, Plaintiff claims that Defendants Teamer and Bush filed false reports with respect to this incident, and that they "conspired together and [k]new this information w[ould] cause injury to Plaintiff . . . ."  According to Plaintiff, these reports "went all over the world wide web . . . ."  Plaintiff also seems to allege that the reports went to "law official[s] over many states . . ." communicating that Plaintiff was "armed."  (DE 1 at 8.)

Plaintiff alleges that Defendants Bush and Teamer completed incident reports dated **January 4, 2011**, indicating that Plaintiff assaulted Bush and Teamer and was partially restrained with leg irons at the time of the escape.  (DE 1 at 10-11.)  Also, Plaintiff alleges it was reported that he "broke into an hospital maintenance closet an[d] stole an ice pick and hammer, an[d] is armed."  (DE 1 at 11.)  Plaintiff further alleges that, on January 4 or 5, 2011, Defendant Pfannes informed the Detroit news media that Plaintiff "was armed with an ice-pick and hammer" and was wearing leg iron restraints.  Pfannes further reported to the

media that the leg irons had been found but Plaintiff was still armed.  Moreover,

Pfannes told the media that Plaintiff "left the hospital and came back for drugs."

(DE 1 at 11.)[4]  On January 5, 2011, a nurse found Plaintiff walking around the

hospital.  Hospital police were contacted, Plaintiff was detained, and he was

returned to WCJ on January 5, 2011.  (DE 1 at 10.)

The day after the escape, Defendant Bulifant - of Wayne County Sheriff's

Office Internal Affairs – reviewed video surveillance of the transport, which

showed that Plaintiff "was not restrained" by either leg irons or handcuffs.  (DE 1

at 11.)  On January 6, 2011, Defendant Bush, Defendant Teamer, and a union

officer (Corporal Martin) met with Defendant Bulifant.  Martin provided Bulifant

with the officers' supplemental incident reports, which "differed from their earlier

_____

[4] Each of the pending motions to dismiss, as well as Plaintiff's December 1, 2016
response, provides news articles as attachments.  (DE 10-9, DE 18 at 21-24, DE 19
at 56-62.)  For example, a January 4, 2011 CBS Detroit article indicates that
Wright "may be armed."  (DE 10-9 at 3.)  A same-day article by Toledo on the
Move reports that Plaintiff "was wearing a dark green jail uniform and leg
shackles."  (DE 18 at 22.)  A January 5, 2011 CBS Detroit article indicates that
Defendant Pfannes "told WWJ that with Wright having been on the lam so long,
authorities suspected he was getting help from a friend or family member."  (DE
10-9 at 5.)  Another article, apparently from Click on Detroit, stated that
"Undersheriff Daniel Pfannes said Wright was not handcuffed on Tuesday because
he was being treated for a wrist injury, but was in dark green inmate garb with leg
shackles."  (DE 18 at 23; *see also* DE 18 at 24.)  Another source reported that
Pfannes stated, among other things, Wright "ran back into the hospital and went
into a maintenance room, where he acquired a hammer and an ice pick."  (DE 18 at
24.)  Moreover, a January 12, 2011 Campus Safety Magazine article is sub-titled,
"Convicted rapist Willie B. Wright was taken to a hospital for a wrist injury, where
he fought two deputies and fled. He was not handcuffed and was able to work his
way out of one of his leg irons before escaping."  (DE 10-9 at 8.)

reports[,]" in that "they stated that Plaintiff Wright had not been restrained during transport" from the WCJ to the Hospital.  (DE 1 at 12; *compare* DE 10-5, DE 10-6.)

> **2.   The Wayne County Defendants' are entitled to dismissal of Plaintiff's claims against them.**

As to the Wayne County Defendants, Plaintiff's "statement of claims" alleges that his Fourteenth Amendment rights to due process and equal protection were violated when:  **(a)** & **(b)** Defendants Bush and Teamer filed false police incident reports on January 4, 2011 (DE 1 at 15-16);  **(c)** Defendant Pfannes made false statements to the media (DE 1 at 17); and **(d)** Defendant Bulifant failed to share video surveillance information with those investigating the situation (DE 1 at 18).

Defendants Bush, Teamer, Pfannes and Bulifant argue that Plaintiff's lawsuit:  **(a)** is time-barred under 42 U.S.C. § 1983 and Mich. Comp. Laws § 600.5805;  **(b)** does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2); and **(c)** fails "to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).  (DE 10 at 1, 4-5, 10-16.)  The Court will address these arguments *seriatim*.

> **a.   Plaintiff's lawsuit is time-barred.**

The Wayne County Defendants argue that Plaintiff's lawsuit is time-barred, because Plaintiff filed this 42 U.S.C. § 1983 action in July 2016, "based on events

that occurred in January of 2011[.]"  (DE 10 at 10-11.)  The Court should agree.

Preliminarily, as Defendants point out, the causes of action against them are best

construed as defamation claims.  (DE 10 at 7, 10.)  This is so, even though Plaintiff

purports to file his lawsuit under 42 U.S.C. § 1983 by way of a form "Prisoner

Civil Rights Complaint" and describes his claims as based upon the Fourteenth

Amendment due process and equal protection.  (DE 1 at 1, 6-8, 15-18.)  At the

time of the events in question, Plaintiff had already been sentenced on unrelated

charges for events which occurred in 2009, and Plaintiff does not plead that the

matters of which he complains were used against him in a prosecution or

disciplinary action related to the 2011 events.  Therefore, Plaintiff's allegations

about the Wayne County Defendants' 2011 actions - false incident reports, false

statements to the media or failure to share video surveillance information with

those investigating the situation (DE 1 at 15-18) – do not add up to a deprivation of

Plaintiff's "life, liberty, or property, without due process of law[,]" or denial of

"equal protection of the laws."  U.S. Const. amend. XIV.

Construing Plaintiff's claims against the Wayne County Defendants as

alleging state law defamation claims, the statute of limitations would be one year.

*See* Mich. Comp. Laws § 600.5805(9)..  Plaintiff acknowledges this, irrespective of

whether the defamation is alleged as libel or slander.  (DE 18 at 8.)  Moreover, a

third party's republication of a defamatory statement does not affect the running of

the limitation period for the initial statement, so the fact that the officers'

statements may have been picked up by the media or later broadcast by others over

the Internet does not afford Plaintiff more time in which to file suit against these

defendants.  *See, Mitan v. Campbell*, 474 Mich. 21, 24, 706 N.W.2d 420, 422

(2005).

In general, "[e]xcept as otherwise expressly provided, the period of

limitations runs from the time the claim accrues."  Mich. Comp. Laws § 600.5827.

Thus, the question becomes, when did Plaintiff's defamation cause of action

accrue?  "The claim accrues at the time provided in [Mich. Comp. Laws §§] 5829

to 5838, and in cases not covered by these sections the claim accrues at the time

the wrong upon which the claim is based was done regardless of the time when

damage results."  *Id*. (internal footnote omitted).  As the Michigan Supreme Court

has clarified, "[a] defamation claim accrues when 'the wrong upon which the claim

is based was done *regardless of the time when damage results*.'"  *Mitan*, 474 Mich.

at 24, 706 N.W.2d at 422  (emphasis added).

In the instant case, Plaintiff's defamation causes of action against the Wayne

County Defendants accrued in 2011 – when Plaintiff alleges the wrong was done.

"The period of limitations runs from the time the claim accrues[,] which in the case

of libel is from the time of publication[,] even though the person defamed has no

knowledge thereof until sometime afterwards."  *Hawkins v. Justin*, 109 Mich. App.

13

743, 746, 311 N.W.2d 465, 466 (1981) (citations omitted).[5&6] Here, the publications of which Plaintiff complains are the allegedly false statements made during January 2011 – either in the incident reports or to the media outlets. Therefore, the one-year statute of limitations on Plaintiff's related defamation claims expired in 2012.

Plaintiff's response on this issue is unavailing. He asserts that he "did not discover the unconstitutional misconduct until April 2016, when his daughter informed him that [Defendants Bush and Teamer were] convicted in the state courts." (DE 18 at 6, 8.) He also offers his and his daughter's declarations, each of which addresses, among other things, the subject of notice. (DE 18 at 7 ¶¶ 2, 5; DE 18 at 28 ¶¶ 2, 5; DE 18 at 26.) Similarly, within his complaint, Plaintiff claims he did not find out about Bush and Teamer's July 15, 2014 convictions until April 20, 2016. (DE 1 at 13.) These discoveries are of no import.

---

[5] *Hawkins* also found that prisoners were afforded "additional time to assert their legal rights" (in that case a libel claim) under the disability provision found in the former version of Mich. Comp. Law 600.5851, 311 N.W.2d at 467; however, under the 1993 amendment to that statute (effective April 1, 1994), "imprisonment no longer qualifies as a personal disability that extends the period of limitations after April 1, 1995." Institute of Continuing Legal Education, *Guide to Michigan Statutes of Limitations* at 16, § 2.6 (January 2016 Update); *see*, §§ 9-11 of the current statute.

[6] *See also*, *Leeper v. Home Depot U.S.A., Inc.*, No. 05-71264, 2006 WL 276737, at *2 (E.D. Mich. Feb. 2, 2006) (Cohn, J.) ("Under Michigan law, a defamation action accrues at the time of publication, regardless of whether the defamed individual is aware of the publication.") (citing *Hawkins*, 109 Mich. App. at 746).

14

For Plaintiff's benefit, I note that the Court has no reason to doubt his assertions about his late discovery of the false publications. Nevertheless, as the foregoing cases instruct, Plaintiff's awareness of the allegedly offending publication(s) is not relevant to the accrual of his defamation claim. Plaintiff relies upon *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir. 1999) ("Typically the statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury—when the plaintiff *knows or has reason to know* about the occurrence of the unconstitutional search.") (emphasis added), *abrogation recognized by Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 639 (6th Cir. 2007), and *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (the statute of limitations "began to run when [Plaintiff] *knew or should have known* of the injury which is the basis of his *Bivens* claim.") (emphasis added) (citing cases). However, Plaintiff's case is distinguishable, as his claims have been construed as state law defamation causes of action, not as alleged 42 U.S.C. § 1983 civil rights violations. Moreover, as noted above, Plaintiff's complaint does not allege that the matters of which he complains were used against him in a prosecution related to the 2011 events of which he complains.[7]

---

[7] Furthermore, at least with respect to the publication of false information in the news media based on Officer Phannes's actions, the test he wishes to apply does

Additionally, Plaintiff did not need Bush and Teamer's July 2014 convictions to know that the Wayne County Defendants actions in 2011 were injurious.  Therefore, even if Plaintiff "was not aware that the offending defendants violated his constitutional rights until April of 2016, when [hi]s daughter informed him [of] what she had discovered on the internet[,]" and even if he "was completely alienated from society, had no access to the internet as the MDOC does not permit its prisoners to access it, [and] had no information if the criminal courts had convicted the defendants[,]" (DE 18 at 8), it would not make a difference to the accrual of his defamation claims.[8]

Plaintiff's claims against the Wayne County Defendants are based upon the veracity, or lack thereof, of the January 4, 2011 incident reports, the January 6, 2011 incident reports, and communication to media outlets around that time, as well as a failure to share video surveillance information with those investigating

---

not help him.  He "knew or should have known" of these very public communications at or near the time that they occurred."

[8] In any case, it does seem that Plaintiff knew something was afoul in 2014. Plaintiff admits he was "issued a writ to appear as a material witness in the defendants' criminal trials," - which took place from July 7, through July 15, 2014 - but was "quickly ushered out of the courtroom immediately after his testimony and never contacted by the victim's rights advocate, even where he was officially a 'victim' under the victims right statute[,]" nor was he "contacted by the Courts or any agent to appraise me of the status of the trial."  (DE 18 at 8, DE 10-8.) Although the timing is unclear, Plaintiff similarly admits that he "was aware that Defendants were accused *of the violations*," but did not become aware of Teamer and Bush's July 2014 *convictions* until his daughter informed him during April 2016.  (DE 18 at 8 (emphasis added).)

the situation.  (DE 1 at 9-12, 15-18.)  As such, defamation claims based on these events should have been filed by January 2012, at the latest.  In sum, the Court should conclude that Plaintiff's defamation claims against the Wayne County Defendants are time-barred.

>           **b.**           **Plaintiff fails to state a claim as to Defendant Bulifant.**

To be sure, Plaintiff's claim against Defendant Bulifant – based on his failure to share video surveillance information with those investigating the situation – is not, in any sense, a classic defamation claim.  Instead, it rings as some kind of "civil obstruction of justice" claim which, in turn, *contributed to* the alleged defamation.  (*See* DE 1 at 18.)  However, as University of Notre Dame Law Professor Joseph P. Bauer was known to say, a Fed. R. Civ. P. 12(b)(6) motion is the legal equivalent of saying, "So what?"  Here, even assuming Plaintiff's statement of claims as to Defendant Bulifant are true – meaning, assuming that the video showed Plaintiff was not restrained with leg irons, did not take an ice pick from the Hospital's maintenance closet, and/or did not assault the officers, and assuming that the sharing of such information would have prevented the publication of false information  –  Plaintiff has still not stated a Fourteenth Amendment due process and/or equal protection claim "upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  Essentially contending that Defendant Bulifant "*could have" set the record straight* is not a claim.  At best, it is a

"contributory defamation" claim, which: (a) is not a claim; and, (b) relates to a time-barred defamation claim.

> **c.     The Court need not address whether Plaintiff's complaint complies with Fed. R. Civ. P. 8 or Fed. R. Civ. P. 12(b)(6) as to Defendants Bush, Teamer and Pfannes.**

The Wayne County Defendants argue that Plaintiff's complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because it does not satisfy Fed. R. Civ. P. 8's pleading requirements, does not allege that the false police reports harmed him, and does not state a plausible claim against any defendant.  (DE 10 at 12-14.)  The Wayne County Defendants also argue that Plaintiff has failed to state a claim upon which relief can be granted, because "a defamation claim cannot standing alone constitute a deprivation of liberty or property under the 14th Amendment or due process," and "Plaintiff cannot show that his reputation in the community was damaged by any allegedly false statements."  (DE 10 at 15-16.) [9]

---

[9] "The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and, (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication." *Mitan*, 474 Mich. at 24, 706 N.W.2d at 421 (citing cases).  *See also Rouch v. Enquirer & News of Battle Creek Michigan*, 440 Mich. 238, 251, 487 N.W.2d 205, 211 (1992) (libel); Mich. Comp. Laws § 600.2911(7) ("An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently.").  Whatever else was inaccurate about the incident reports or the communications to the various media outlets, it is unclear how Wright, who was unquestionably a

Plaintiff has responded in opposition to these arguments.  (DE 18 at 9-13, DE 18 at 14-18.)  Still, if the Court agrees with the foregoing recommendation that Plaintiff's claims are time-barred, then the Court need not address Defendants' remaining arguments under Fed. Rules Civ. P. 8 and 12.

### 3. Defendant Hospital is entitled to dismissal of Plaintiff's claims against it.

As previously noted, Plaintiff alleges it was reported that he "broke into an hospital maintenance closet an[d] stole an ice pick and hammer, an[d] is armed." (DE 1 at 11.)  Plaintiff's "statement of claims" against Defendant Hospital is as follows:

> (1)   The maintenance closet is located at this hospital.  Someone (staff) had to say what is missing[.]
>
> (2)   Please do not dismiss this claim until all reports are viewed.

(DE 1 at 19.)

Perhaps this is a reference to the January 5, 2011 article titled *Inmate escapes from deputies*, which is attached to Plaintiff's response and which references Defendant Pfannes's statement that Plaintiff "went into a maintenance room, where he acquired a hammer and an ice pick." (DE 18 at 24.)  Nonetheless,

---

prisoner at the time of the incidents in question, was harmed by an inaccurate report as to whether he was restrained by leg irons or shackles at the time of his essentially uncontested escape.  *See*, *e.g.*, *Brooks v. Am. Broad. Companies, Inc.*, 932 F.2d 495, 501 (6th Cir. 1991) (within examination of "'Libel Proof' Concept," the Court acknowledged that "[c]riminal convictions are the well-worn path to achieving libel-proof status . . . .").

Defendant Hospital's arguments substantially mirror those of the Wayne County Defendants. (*Compare* DE 19 at 1, 4, and 9-12; DE 10 at 1, 4, and 10-16.)[10] In fact, the statute of limitations argument is identical. (DE 10 at 10-11, DE 19 at 9-10.) Moreover, while Plaintiff does not specify whether his claims against Defendant Hospital are based upon the Fourteenth Amendment (which would be inappropriate against a non-governmental entity in any case), here, too, the Court should construe Plaintiff's claims against Defendant Hospital as attempting to allege a state law claim of defamation. This is so, because, taken in a light most favorable to the Plaintiff, he appears to assert that someone at the Hospital had to have informed law enforcement – presumably falsely - about what was missing from the maintenance closet. (DE 1 at 19.) As such, and leaving aside the obviously very speculative nature of the allegation, the one year statute of limitations for defamation would likewise bar the claim. Mich. Comp. Laws § 600.5805(9). For the reasons stated above as to the Wayne County Defendants,

---

[10] The differences between their respective arguments are not material here. For example, Defendant Hospital argues that Plaintiff "fails to allege any harm that [the Hospital] allegedly caused him," while the Wayne County Defendants argue that Plaintiff "fails to allege that the false police reports harmed him[.]" (DE 19 at 10-11, DE 10 at 12-14.) Also, Defendant Hospital omits the substance of the argument that Plaintiff "cannot prove the elements of defamation[.]" (*Compare* DE 19 at 11-12, DE 10 at 15-16.) However, as noted above, the parties' statute of limitations arguments are identical, and it is that argument on which this report and recommendation is based.

any defamation claims against Defendant Hospital based on the events of 2011 should also be dismissed.

### E.   CONCLUSION

Plaintiff's allegations against the five defendants in this case are best construed as state law defamation claims concerning the events of 2011.  Given that the statute of limitations for such claims is one year (Mich. Comp. Laws §§ 600.5805(9)), and given that such claims accrue "at the time the wrong upon which the claim is based was done, Plaintiff's claims against all Defendants – filed on July 13, 2016 - are time-barred and should be dismissed.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: July 5, 2017                        s/Anthony P. Patti
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record
on July 5, 2017, electronically and/or by U.S. Mail.

                                           s/Michael Williams
                                           Case Manager for the
                                           Honorable Anthony P. Patti

22